**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH KAVALOUSKY, ) | CASE NO. 5:12-CV-2162 |
| ) | |
| Plaintiff, ) | JUDGE OLIVER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
|    Acting Commissioner of Social ) | |
|    Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff, Jospeh Kavalousky ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner")[1], denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that: (1) Plaintiff's motion for remand (Doc. Nos. 16, 21, 22) be DENIED; and (2) the Commissioner's final decision be AFFIRMED.

**I.  PROCEDURAL HISTORY**

On May 6, 2008, Plaintiff filed applications for POD and DIB, alleging a disability onset date of May 1, 2007.  (Transcript ("Tr.") 8.)  The applications were denied initially

---

[1]  On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On August 23, 2010, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff appeared, was represented by an attorney, and testified. (*Id*.) A vocational expert ("VE") also testified. (*Id*.) On August 27, 2010, the ALJ found that Plaintiff was not disabled. (Tr. 16.) On June 26, 2102, the Appeals Counsel declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On August 23, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 22, 23, 25.) Plaintiff argues that the ALJ erred in failing to consider his anxiety throughout the sequential analysis. Further, in addition to seeking review of the Commissioner's final decision, Plaintiff has filed a motion to remand the case to the Commissioner for consideration of new evidence. (Doc. Nos. 16, 21, 22.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on April 13, 1959. (Tr. 14.) He had at least a high school education and is able to communicate in English. (*Id*.) He has past relevant work as a painter and landscaper. (*Id*.)

### B. Medical Evidence

#### 1. Treating Providers

On April 6, 2004, Terrance Simon, M.D., examined Plaintiff, who was complaining of pain and tingling in his arms upon reaching, as well as a knot between

his shoulder blades. (Tr. 238.) An April 6, 2004 x-ray of Plaintiff's cervical spine revealed moderately severe degenerative disc disease at C5-C6, and mild degenerative disc disease at C6-C7. (Tr. 220.) On April 15, 2004, Plaintiff underwent a nerve conduction study. (Tr. 219.) It revealed mild carpal tunnel syndrome in Plaintiff's left wrist, borderline mononeuropathy in the right wrist, and no evidence of cervical nerve root irritation. (*Id.*) On April 27, 2004, Plaintiff complained to Dr. Simon of cervical back pain and pain in his left elbow. (Tr. 237.) Dr. Simon diagnosed Plaintiff with bilateral carpal tunnel syndrome and tendinitis, and prescribed Flexeril and Celebrex. (*Id.*)

On January 25, 2005, Plaintiff complained to Dr. Simon of cervical radicular pain, as well as occasional left hip pain. (Tr. 164.) He reported finding relief with manipulation of the thoracic region. (*Id.*) Dr. Simon's examination revealed bilateral tenderness in Plaintiff's upper thoracic paraspinal region, unrestricted range of motion in Plaintiff's upper extremities, and "somewhat impaired" cervical range of motion and rotation. (*Id.*) Dr. Simon prescribed Arthrotec. (*Id.*)

On June 8, 2005, Plaintiff underwent surgery to repair a fracture of his right fifth metacarpal. (Tr. 214.) Dennis Glazer, M.D., performed an open reduction and internal fixation with a compression plate. (*Id.*0

On June 16, 2005, Plaintiff reported to Dr. Simon that he had recently fractured his right fifth metacarpal and, thus, had been using his left arm and hand more frequently. (Tr. 163.) He complained of left arm muscular and joint pain, and requested an anti-inflammatory. (*Id.*) Dr. Simon prescribed Naprosyn. (*Id.*)

On October 30, 2008, Plaintiff complained to Dr. Simon of neck and back pain,

bilateral knee pain and carpal tunnel syndrome in both hands.  (Tr. 176.)  He reported that he fell easily because his knees "gave out," that his grip strength was weak, and that he could no longer perform manual labor.  (*Id*.)  Dr. Simon's examination revealed a limited range of motion in Plaintiff's neck, weakness and parasthesia in his left arm and hand.  (*Id*.)  Dr. Simon prescribed Vicodin, Flexeril and Flomax.  (*Id*.)

In April 2009, Plaintiff contacted Dr. Simon's office requesting a refill of his Vicodin prescription.  (Tr. 181.)  Dr. Simon declined to refill the prescription because he had not examined Plaintiff since October 2008.  (*Id*.)  In March 2010, Dr. Simon's office contacted Plaintiff to schedule an appointment so that Dr. Simon could complete Plainitff's disability paperwork, and Plaintiff informed Dr. Simon's staff that he was unable to pay for an appointment because he had not been working due to "severe back pain."  (*Id*.)

On March 30, 2010, a physician at the Total Living Center ("Total Living") noted Plaintiff's complaints of chronic pain and anxiety.  (Tr. 225.)  Plaintiff was resistant to neck movement.  (*Id*.)  The physician instructed Plaintiff to obtain an MRI of his cervical lumbar spine, and prescribed Tramadol and Xanax.  (*Id*.)

On November 19, 2010, Plaintiff reported to Dr. Simon that he had been seeing a retired physician, Dr. Schuster, for his back problems.  (Tr. 180.)  He reported that he had been unable to work since November 2008, and that his right knee kept "going out" on him.  (*Id*.)  Plaintiff complained of back and neck pain that radiated into his upper left extremity, as well as migraines, pain and swelling in his left hand and carpal tunnel syndrome.  (*Id*.)  Dr. Simon's examination revealed a limited range of motion in

4

Plaintiff's cervical spine, as well as decreased grip strength. (*Id*.) Dr. Simon prescribed Flexeril, Vicodin and home exercises. (*Id*.)

### 2. Agency Reports and Assessments

On September 2, 2008, Murrell Henderson, D.O., examined Plaintiff at the request of the agency. (Tr. 165-67.) Plaintiff stated that he sought disability on the basis of back pain, neck pain, carpal tunnel syndrome and occasional numbness in his extremities. (Tr. 165.) Plaintiff had worked as a landscaper, performing tree trimming, two weeks prior to the exam. (*Id*.) Dr. Henderson's examination revealed a normal range of motion in the lumbar spine, with slight restrictions in the side bending and rotation of the cervical spine. (Tr. 166.) Plaintiff was able to squat without difficulty and showed satisfactory grip strength. (*Id*.) Views of Plaintiff's lumbar spine performed on September 2, 2008, at the request of the agency revealed minimal degenerative joint disease with slight levoscoliosis of the lumbar spine. Views of Plaintiff's cervical spine revealed marked narrowing of the C5-C6 and C6-C7 intervertebral disc spaces with bilateral osteophytic changes at the neural foramen.

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

At his August 23, 2010 administrative hearing, Plaintiff testified as follows:

Plaintiff drove every day or every other day to see his mother, and to the grocery store. (Tr. 26.) He drove his mother to the grocery store and doctor, and mowed her lawn "once in a while." (Tr. 26-27.) He was a member of a shooting range, where he shot pistols. (Tr. 28.) He was taking Flexeril, Vicodin and Xanax. (*Id*.) Plaintiff had

never been diagnosed with a mental problem, and he had not ever been examined by a psychiatrist or psychologist.  (Tr. 28-29.)  He experienced anxiety as a result of not being able to work and worrying about his financial state.  (Tr. 29.)

Plaintiff was capable of walking a block or two without having to stop due to pain and numbness in his lower back.  (Tr. 29.)  He could stand for one hour, and would need to get up and move around after a half-hour or an hour.  (*Id*.)  Plaintiff could lift no more than 20 or 25 pounds, and experienced pain and stiffness in his lower back when bending forward.  (Tr. 30.)  When he used his hands for any kind of scraping or painting, his hand swelled up and grew numb.  (*Id*.)

Plaintiff experienced continuous pain in his lower back, between his shoulder blades and his neck.  (Tr. 31-32.)  On a typical day, he woke up, did some laundry or house cleaning and checked on his mother.  (Tr. 32-33.)  He occasionally went to the shooting range, and cooked a meal each day.  (Tr. 33.)  He was capable of grocery shopping and vacuuming, but could not shovel snow.  (*Id*.)

### 2. VE Testimony

The ALJ described a hypothetical individual of Plaintiff's age, education and work history, with the ability to perform light work with the following limitations:

> Can only occasionally climb ramps or stairs; they can never climb ladders, ropes or scaffolds; they can occasionally balance, stoop, kneel, crouch and crawl; but they can only occasionally rotate, flex and extend the neck.  Further, this individual can only occasionally handle objects; and . . . only occasionally perform bliateral fine manipulation.  Further, this individual would have to avoid concentrated exposure to excessive vibration . . . hazardous moving machinery and unprotected heights.

6

(Tr. 47, 48.)  The VE testified that the hypothetical individual would not be able to perform Plaintiff's past work.  (Tr. 48.)  The ALJ removed the fine manipulation limitation from the hypothetical, and the VE testified that, absent that limitation, the hypothetical individual would be able to perform work as a greeter, an usher, or a counter clerk.  (Tr. 48-49.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

In his August 27, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through December 31, 2012.

2. Plaintiff has not engaged in substantial gainful activity since May 1, 2007, the alleged onset date.

3. Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome, status post fracture of the fifth finger of the right hand, and hypertension.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; occasionally rotate,

8

        flex and extend his neck; occasionally handle objects bilaterally; and must avoid concentrated exposure to excessive vibration, hazardous machinery and unprotected heights.

6.     Plaintiff is unable to perform any past relevant work.

7.     Plaintiff was born on April 13, 1959 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Plaintiff subsequently changed age category to closely approaching advanced age.

8.     Plaintiff has at least a high school education and is able to communicate in English.

                                                                \*   \*   \*

10.     Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.     Plaintiff has not been under a disability, as defined in the Act, from May 1, 2007 through the date of the ALJ's decision.

(Tr. 10-15.)

## V.    LAW & ANALYSIS

### A.    Standard of Review - Motion to Remand

     Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . . for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate. *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711

(6th Cir. 1988). Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore, 865 F.2d at 711.

Here, Plaintiff requests that this Court remand his case to the Commissioner to consider copies of MRIs of his lumbar and cervical spine taken on October 11, 2012. (Doc. Nos. 21-1, 21-2.) The MRI of Plaintiff's lumbar spine reveals "multilevel degenerative disc disease more prominent at lower lumbar spine with facet arthropathy resulting in mild to moderate canal stenosis and neural foraminal narrowing." (Doc. No. 21-1 at 2.) The MRI of Plaintiff's cervical spine reveals "multlevel degenerative disc disease and uncovertebral hypertrophy at C3 through C7 levels with neural foraminal narrowing." (Doc. No. 21-2 at 2.) Plaintiff argues that the October 2012 MRIs are new and material because they show that Plaintiff meets the requirements for one of the Listings of Impairments,[2] and because they reflect the condition of his back "only three months after the Appeals Council decision." (Plaintiff's Brief ("Pl. Br.") at 8.)

Plaintiff's arguments are not well taken. The October 2012 MRIs demonstrate that, to some extent, Plaintiff's back condition deteriorated at some point after his September 2008 MRI. They do not reflect the condition of Plaintiff's back at the time of

---

[2] Plaintiff does not specify which Listing.

10

the August 2010 administrative hearing. Plaintiff cannot show that, had the ALJ been presented with the October 2012 MRIs, he would have come to a different conclusion regarding Plaintiff's applications. Accordingly, Plaintiff cannot sustain his burden of demonstrating that the October 2012 MRIs are material. Further, as the Sixth Circuit has recognized, "[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition." *Sizemore*, 865 F.2d at 712. Rather, where new evidence shows that a claimant's condition has degenerated, "the appropriate remedy [is] to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." *Id*. Accordingly, it is recommended that this Court deny Plaintiff's motion to remand his case for consideration of new evidence.

**B.     Standard of Review - Commissioner's Final Decision**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.     Plaintiff's Remaining Argument**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's anxiety at any step of the sequential analysis. According to Plaintiff, the record contains evidence – Plaintiff's own testimony and medical records reflecting that physicians had prescribed him anti-anxiety medications – that Plaintiff has anxiety and, thus, the ALJ was required to consider and evaluate this mental impairment. The Commissioner argues that there is not sufficient evidence in the record to establish that Plaintiff's anxiety constituted an impairment. Plaintiff's arguments lack merit.

The Act defines a disability as "an inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). A medically determinable impairment is one that "results from anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The claimant bears the burden of establishing the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence thereof as the Secretary may require.").

Here, Plaintiff has not carried his burden of establishing anxiety as a medically determinable impairment such that the ALJ was required to consider it throughout the sequential evaluation. No physician diagnosed Plaintiff with anxiety. Plaintiff testified at his administrative hearing that he had never been diagnosed with anxiety and had never been examined by a psychologist or psychiatrist. Rather, he attributed his anxiety — and his use of Xanax – to his concern regarding his financial condition and the effect his inability to work had on his future. The record reflects that Dr. Simon prescribed Plaintiff Xanax in January, June and September 2005 – prior to Plaintiff's disability onset date – and that a physician at Total Living noted Plaintiff's complaint of anxiety and prescribed Xanax in March 2010. (Tr. 225, 242.) The record contains no other evidence that Plaintiff had anxiety. Indeed, Plaintiff did not allege anxiety as a basis for disability, either in forms associated with his application for benefits (Tr. 158), or during his examination by Dr. Henderson (Tr. 165-67). Accordingly, Plaintiff cannot credibly claim that the record establishes that he suffered from anxiety that was a medically determinable impairment as required by the Act. Accordingly, this argument

presents no basis for remand in this case.[3]

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that: (1) Plaintiff's motion for remand (Doc. Nos. 16, 21, 22) be DENIED; and (2) the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 18, 2013

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[3] Plaintiff contends that the Commissioner's argument on this point is *post hoc* rationalization such that this Court cannot consider it. However, this is not a case wherein the ALJ offered one reason for a conclusion and the Commissioner now advances another basis to justify that conclusion. Rather, because Plaintiff's anxiety was not a medically determinable impairment, the ALJ was not required to consider it at all. Thus, the Commissioner's explanation for this omission does not constitute impermissible *post hoc* rationalization.

14